Paulsen and Elizabeth SPENCE

v.

UNITED STATES.

Nos. 292–54, 111–55.
United States Court of Claims.
Dec. 4, 1957.

Clarence E. Dawson, Washington, D. C., for plaintiffs. Weston Vernon, Jr., and Milbank, Tweed, Hope & Hadley, New York City, were on the brief.

Robert Livingston, Haverhill, Mass., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and Rufus E. Stetson, Jr., Washington, D. C., were on the brief.

JONES, Chief Judge.

In these two cases, consolidated for trial and involving the same issues of law and fact, the plaintiffs, husband and wife, sue to recover from the defendant income taxes alleged to have been improperly assessed for the years 1949 (case No. 292–54) and 1950 (case No. 111–55) in the amounts of $3,693.56 and $4,718.46, respectively.

The sole issue presented is whether the Commissioner of Internal Revenue has properly determined that three-eighths of the amount received by plaintiffs from Spence Engineering Company, Inc., during each of the years in question, was compensation subject to regular income tax rates or whether, as claimed by plaintiffs, the entire amount represented royalties, thus subject only to capital gains rates. Elizabeth Spence is joined in these suits only because a joint return was filed with the Commissioner; hence, the term plaintiff as hereinafter used will refer only to the husband, plaintiff Paulsen Spence.

Since its inception in 1926, plaintiff was the president of the Spence Engineering Company, Inc. (hereinafter referred to as Spence), a company built on the basis of certain discoveries made by plaintiff and patents held by him.

In 1939, a reorganization of Spence was undertaken in which Spence was to

acquire the assets of the Rider Ericsson Engine Corporation (hereinafter referred to as Ericsson), with which it did much business; Mr. Dexter, treasurer, stockholder and creditor of Spence and principal owner of Ericsson, was to accept preferred stock in Spence in exchange for its indebtedness to him; and plaintiff was to sell his patents to Spence. Since the company was not in a financial position to offer plaintiff a lump-sum payment for his patents, an arrangement to pay him a continuing percentage of net sales was contemplated.

Plaintiff at first demanded 10 percent but this was objected to by Mr. Dexter who thought 8 percent of the net sales, provided they exceeded $300,000, would be a better figure. In the event that net sales did not exceed $300,000, plaintiff's compensation was to be fixed by the Board of Directors of Spence.

There is testimony to the effect that, upon the contingency that plaintiff might sell his interest in the company, Mr. Dexter suggested, and plaintiff agreed, a better sales price might be obtained by both of them (plaintiff and Dexter) for their stock if it were provided that the payments to plaintiff should be decreased from 8 percent to 5 percent of the net sales at such time as he might sell his stock.

Subsequently, an offer to sell his patents was made by the plaintiff to the corporation by letter of May 15, 1939. The offer also made the sale contingent upon Mr. Dexter's exchanging the corporation's indebtedness to him for a specified amount of no par value cumulative preferred stock.

This letter offer, however, did not condition the reduction of the payments to be made to plaintiff from 8 percent to 5 percent on the sale of stock, rather on plaintiff's retiring as executive head of the company.

An agreement consistent with the offer was executed on May 26, 1939, the same day on which the company's Board of Directors passed a resolution accepting the offer and embodying the terms thereof.

Plaintiff started receiving his 8 percent of net sales in 1941 which was the first year the net sales exceeded the $300,000 specified in the agreement. During all the previous years he had received a fixed compensation, in 1940 receiving $3,635.

For the years 1941–1948, inclusive, sales exceeded $300,000 and payments to plaintiff were considerable. Plaintiff treated all of his receipts under the plan as ordinary income for those years. However, after the Tax Court in 1949 decided Edward C. Myers v. Commissioner, 6 T.C. 258 (1946), and therein held that payments made for the sale of patents were payments for the sale of capital assets and the amount received was subject to capital gains tax rates by the recipient and not ordinary income tax rates, plaintiff listed all his receipts from Spence as royalties thus attempting to obtain the full advantage of capital gain tax rates.

The Commissioner of Internal Revenue rejected this listing. He treated only 5 percent of the total receipts as royalties entitled to capital gains treatment. Since the express agreement between plaintiff and Spence stipulated that should plaintiff retire as executive head of the company his payments would be cut down to 5 percent, the Commissioner felt that the additional 3 percent necessarily constituted compensation for services rendered as president of the corporation; hence, subject to ordinary tax rates. He, therefore, assessed taxes accordingly for the years 1949 and 1950. Plaintiff paid the assessments and here sues for the refund thereof, his claims for refund having been denied by the Commissioner.

Initially, plaintiff, in arguing against the assessment of ordinary income tax rates on the 3 percent, asserts that in order for the higher tax rates to be assessed it must first be shown that the parties intended that some part of the 8 percent was to be compensation for services as president rather than royalties as such. Plaintiff claims this cannot be shown since, he argues, the reduction

was the result of plaintiff's acceding to the suggestion of Mr. Dexter that his stock would sell at a higher price if the annual payments to him for the assignment of the patents were reduced from 8 percent to 5 percent of the net sales, and because of plaintiff's belief that if his interest in Spence was acquired by a large manufacturing concern, sales of the products manufactured under the patents would be substantially increased with the result that he would not suffer a detriment by the reduction. Plaintiff thus contends that the reduction was not because of any intent on the part of the parties that a portion of the 8 percent was compensation to plaintiff for services to the corporation as its president.

Second, plaintiff asserts that no services were rendered the corporation by plaintiff during the years in question and in support thereof points to the fact that from 1941 to the present plaintiff has spent little or no time on company affairs and has, in fact, spent nearly all of his time in Louisiana, while the company is located in Walden, New York; that his time was almost completely taken up by other interests; that, notwithstanding these facts, the payments, no matter in what percentages they were paid, were part of the sales price of the patents to Spence, and were not intended in any way to be compensation for services rendered; and that any assistance plaintiff may have rendered the company was technical in nature and rendered only in connection with the company's use of the patents; that such assistance is ancillary and subsidiary to the sale of patents and does not justify holding any part of the purchase price to be compensation for services. For this latter proposition plaintiff cites the cases Raymond M. Hessert v. Commissioner, 6 T.C.M. 1190 (1947) and Arthur C. Ruge v. Commissioner, 26 T.C. 138 (1956), both of which do stand for the proposition for which cited.

█ The plaintiff presents a rather persuasive case with his allusions to the record to show the intent of the parties at the time the agreement was made, to wit, that it was intended that the payments represented only royalties paid to plaintiff for selling his patents to the company and that no part was intended to represent compensation as such. However, plaintiff relies chiefly on oral testimony to sustain his case when documentary evidence, at least in some respects, reflects a different picture. This testimony is based on recall by witnesses of what took place about 17 years previously and is not substantiated by the documentary evidence of record.

These documents, executed contemporaneously with the sale of the patents to Spence, must be given more weight in determining intent that can be obtained by a reference to the testimony relied on.

The percentage payments were to be reduced from 8 percent to 5 percent at the time plaintiff ceased to be executive head of the company, not when he sold his stock as contended by plaintiff. That is the express language of the plaintiff's offer to the corporation, the resolution of the corporation and the contract between plaintiff and the corporation. See findings 10, 11, and 12. The oral testimony and plaintiff's argument flies into the face of these documents which must be presumed to be correct. At least they must be given greater weight than testimony relating to events which require witnesses to go back some 17 years in memory.

█ Thus, common sense dictates our conclusion that the provision for the reduction in payments was not to be effectuated when plaintiff sold his stock; but that the provision was included, at least in part, and we firmly believe entirely, because of an intent to compensate plaintiff for his services to the corporation as president. It is entirely conceivable that plaintiff could have sold his stock and have been retained, because of his know-how and for other reasons, as president of the corporation.

That it was intended that at least part of the total payments was to represent compensation is borne out by the follow-

ing excerpts from the documents referred to above. From the plaintiff's offer to the company appears this language:

"This offer is contingent upon * * * the agreement by the corporation to pay to me *as annual compensation for the use of the aforementioned patents together with my services as executive head of the corporation, a royalty of 8% of the total annual net sales* of the corporation whenever such total annual net sales equal or exceed the sum of $300,000 per annum. In the event that the total annual net sales of the. corporation fall below the sum of $300,000 *it is understood that my annual compensation for the use of the aforesaid patents together with my services* shall be fixed annually by the Directors of the corporation * * *." (Italics supplied.)

The corporation resolution is of like effect:

"* * * that *so long as he shall remain the executive head of the corporation the compensation of Paulsen Spence shall be based upon a royalty of 8% of the total net sales* of the corporation when such total annual net sales equal or exceed $300,000 and in the event that the total annual net sales of the corporation fall below the sum of $300,000, *the compensation of Paulsen Spence shall be fixed annually by the Board of Directors.*" (Italics supplied.)

Thus, the express language of plaintiff and the corporation indicates that the parties intended the nature of the payments to be twofold: (1) annual royalties for the use of the patents, (2) annual compensation as executive head of the company.

We conclude, therefore, that the payments to plaintiff were intended to be dual in nature—royalties and compensation for personal services as president of the corporation. Since the 3 percent reduction in the amount plaintiff is entitled to is contingent upon his status as executive head of the company, it

must necessarily be concluded, also, that the 3 percent represents that part of the payments which was intended to be paid as compensation for services rendered, and we so hold.

Plaintiff's other contentions, that he lived a long distance from the company's plant, spent only about two weeks per year on company business and that the payments represented the selling price of the patents only, are without merit.

Notwithstanding the fact that plaintiff spent little time on the company premises and allegedly little time on company business, he was the principal stockholder and executive head of the company and if the policies of the company were not run in accord with plaintiff's wishes by Mr. Dexter, the senior executive officer at the plant, plaintiff would surely have stepped in and seen that they were. At any rate, he was always available for consultation, the telephone being a handy instrument, and undoubtedly he was consulted on many occasions. The record shows that he received reports about twice per week. These reports indicate to us that he was not so completely divorced from the business as plaintiff's counsel would have us believe. We feel certain that plaintiff did not receive two reports per week from his company and never reply or comment thereon to the company's management personnel at the plant. We say this despite plaintiff's argument that he received these reports so he could keep track of the sales and, correspondingly, the amount of royalties due him. The situation necessarily implies that if these twice-weekly reports had shown slackening of sales plaintiff would have wanted to know why and would have taken action to correct the situation. Otherwise, why would he keep such a close check? This, of course, is implicit in our observation above that plaintiff was always available for consultation, was not too divorced from company affairs and still influenced company policy. Payment for such is certainly payment for services within the contemplation of the revenue statutes, which compensation would

necessarily be subject to ordinary income tax rates.

In addition, since plaintiff was the inventor of the patents which were the very lifeblood of the company's existence, it is a natural conclusion that the mere fact of plaintiff's name remaining attached to the company would add some value or prestige.

Also, the record shows plaintiff, as president, signed company bank notes during the years in question. This is certainly the rendition of services no matter how much plaintiff attempts to minimize it.

Plaintiff's last argument is that any work plaintiff did for Spence was merely technical assistance rendered in connection with the proper use of the patents conveyed and thus ancillary and subsidiary to the sale thereof. He argues that such assistance does not justify the conclusion that it represents services for which compensation was paid. As noted, plaintiff cites Hessert, supra, and Ruge, supra, in support of this argument.

We agree with the principle of law stated by those two cases but feel that the case before us is distinguishable on the facts which caused the Tax Court to reach that particular conclusion.

It is indisputable in this case that compensable services were actually rendered and that compensation over and above royalties was intended to be paid. Since the payments to plaintiff were to be decreased by 3 percent when he ceased to be executive head of the company, we must presume that the 3 percent represented what was intended to be compensation for those services.

We hold, therefore, that the Commissioner of Internal Revenue acted properly in disallowing three-eighths of the payments from capital gains treatment.

Plaintiffs' petitions will be dismissed.

It is so ordered.

WASHINGTON, Circuit Judge, sitting by designation, and MADDEN, WHITAKER and LITTLETON, Judges, concur.